ALTENBERND, Judge.
This is an appeal from a nonfinal order in a lawsuit between a mobile homeowners’ association and various entities involved in the ownership or management of the mobile home park. The order certifies a class that appears to include all mobile home owners who have had mobile homes on lots in the park since June 1992. The order does not require any notice to mem *578 bers of the class. Although the order may be defective for procedural reasons, we reverse because the rights of first refusal that are alleged in the mobile homeowners’ association’s second amended complaint are contractual and statutory rights of the association as a corporation. The second amended complaint alleges no claims that the individual mobile home owners could pursue individually or as a class.
This case involves a mobile home park in Naples, Florida, which has been in operation since at least the early 1990s. It has approximately 500 lots. At all relevant times there has been a mobile homeowners’ association. Although it appears that a prior association was replaced by the current association, for purposes of this appeal it is sufficient to regard Naples Estates Homeowners Association, Inc. (NEHA), as the association.
Until the end of 1997, the mobile home park was owned by Ell-Cap/Diversified 75-Naples Estates (Ell-Cap).[1] In September 1997, Ell-Cap allegedly entered into a contract for the sale of the mobile home park to MHC Operating Limited Partnership (MHC) for approximately $11,500,000, and the property was allegedly sold at the end of 1997 to MHC.
Soon after the sale, NEHA filed this lawsuit. Because this is an appeal from a nonfinal order, we have a very limited record provided by the parties in appendices. The order certifying the class was entered in early 2007 while the case was pending on a second amended complaint.[2] The record does not explain why it took more than eight years for the case to reach this posture.
As alleged in the pleadings, the dispute between NEHA and Ell-Cap and MHC centers on rights of first refusal possessed by NEHA at the time of the sale to MHC. Ell-Cap and MHC appear to take the position that the transfer was a corporate or business restructuring and not the type of transaction to which a right of first refusal applies. NEHA argues that it had both a contractual and a statutory right to be notified of this sale and to exercise its right of first refusal. It claims that it is ready, willing, and able to purchase the property upon the terms offered to MHC in September 1997.
According to the second amended complaint, NEHA first obtained contractual rights to purchase this property in a settlement agreement in June 1992. That agreement expressly states that Ell-Cap “hereby grants to the Association an enforceable right of first refusal to purchase the Park when Ell-Cap/Diversified 75-Na-ples Estates offers the Park for sale or receives a bona fide offer to purchase that it intends to consider.” The agreement expressly identifies “the Association” as the nonprofit corporation receiving the enforceable right. Nothing in this agreement gave individuals who owned mobile homes on lots in the park in 1992 any individually enforceable rights to purchase the property.
*579 A similar settlement agreement was executed in April 1996. It extends and confirms an “absolute right of first refusal to purchase park” to “the Association,” which once again is identified as the nonprofit corporation entering into the agreement.
After the settlement agreement, a “right of first refusal to purchase park” was recorded in Collier County records in 1996. It describes NEHA as the “buyer” and grants and conveys to NEHA the enforceable right of first refusal to purchase the park.
Finally, NEHA seeks to enforce a statutory right of first refusal pursuant to section 723.071(1)(b), Florida Statutes (1997). That statute states that “[t]he mobile home owners, by and through the association defined in s. 723.075, shall have the right to purchase the park.” Id. Thus, the statute does not give individual mobile home owners a right of first refusal. That right must be exercised through an association. As a matter of law, the association cannot be an informal group of individuals and must be a corporation. See § 723.075.
NEHA’s second amended complaint seeks to enforce these rights of first refusal. It alleges that NEHA is entitled to specific performance. It also seeks rights to collect certain rents that the park owner otherwise received since 1998. We express no opinion on whether NEHA is entitled to these remedies. However, it is obvious that no member of the class is entitled to any of these remedies. If Ell-Cap is obligated to extend an offer to purchase this property, it must extend that offer to NEHA, not to some group of past or present mobile home owners. If the offer of first refusal is accepted, unless the right is assigned,[3] the entity that must enter into the real estate contract is NEHA.
NEHA has the right to institute and maintain this action, but it does so as a distinct corporation. It does not maintain this action as a class representative for a group of individual mobile home owners. Accordingly, we reverse and remand for further proceedings in which NEHA is permitted to proceed on its own claim but not as a class representative.
Reversed and remanded.
CASANUEVA and WALLACE, JJ., Concur.

. The second amended complaint states that Ell-Cap is also known as Naples Estates Limited Partnership and was formerly known as MHC-Naples Estates Limited Partnership.

. Although we have reservations about the appealability of orders certifying classes in cases under Florida Rule of Civil Procedure 1.222, see Amber Glades, Inc. v. Leisure Assocs. Ltd. P’ship, 893 So.2d 620, 624 (Fla. 2d DCA 2005), on its face this order is titled as a determination of class standing and notice. Thus, we treat it as a nonfinal order appeal-able under rule 9.130(a)(3)(C)(vi). Given the impact this order could have on class members who have no notice, we would reach the same result if we treated the appeal as a petition for common law certiorari.

. The parties have informed us that mobile homeowners' associations usually create another legal entity to purchase such a park and that the affected mobile home owners have an ownership interest in the new legal entity. This practice, however, does not require the mobile home owners to be parties to this lawsuit.